IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WALTER BOOKER, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No.  3:10-CV-1940-P (BF) |
| | § | |
| MICHAEL ASTRUE, Commissioner of the | § | |
| Social Security Administration, | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The United States District Court referred this appeal to the United States Magistrate Judge for findings, conclusions, and recommendation.  Walter Booker ("Plaintiff" or "Booker") brings this action pursuant to Section 405(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  He seeks review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Title II and Title XVI benefits under 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

## I.      BACKGROUND[1]

### A.      Procedural History

On May 18, 2007, Booker filed a Title II application for a period of disability insurance benefits and protectively filed a Title XVI application for supplemental security income.  (Tr. 131-143.)  He meets the insured status requirement of the Social Security Act through December 31, 2008.  (Tr. 18.)  Both of his claims were denied initially on July 2, 2007 (Tr. 75), and upon reconsideration on October 9, 2007.   (Tr. 91.)   Booker then requested a hearing with an Administrative Law Judge ("ALJ"). (Tr. 103.) On December 10, 2008, ALJ Marguerite Lokey held

---

[1] The following history comes from the transcript of the administrative proceedings, which is designated as "Tr."

a hearing in Dallas, Texas. (Tr. 29.) Booker was represented by attorney Brandon P. Rasley. (Tr. 31.) Booker's sister, Linda K. Blair, and a Vocational Expert ("VE") were also present and testified. (*Id.*)

On November 23, 2009, the ALJ issued an unfavorable decision. (Tr. 13.) In her decision, the ALJ followed the five step sequential disability analysis found in 20 C.F.R. §§ 404.1520(a) and 416.920(a). (Tr. 20.) At step one, the ALJ found that Booker has not engaged in substantial gainful activity since April 1, 2006, the alleged onset date. (Tr. 18.) At step two, the ALJ found "seizures" as a severe impairment under 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 19.) During the step three analysis, however, the ALJ found that Booker did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19.) She specifically considered Listings 11.02, for convulsive epilepsy, or grand mal seizures; and 11.03, for non-convulsive epilepsy, or petit mal seizures. (*Id.*)

In her residual functional capacity ("RFC") findings, the ALJ found Booker capable of sustaining medium work as defined in 20 C.F.R. § 404.1567(c), with the limitations of not operating dangerous machinery or working at heights. (Tr. 20.) At step four, the ALJ found that Booker was unable to perform his past relevant work as a "car detailer." (Tr. 23.) At step five, the ALJ concluded that considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the regional and national economies that the claimant could perform. (*Id.*) Specifically, the ALJ stated that Booker could perform the relevant work of a laundry worker, dining room attendant, and production assistant. (*Id.*)

Booker timely requested a review of the ALJ's decision by the Appeals Council on December 16, 2009 (Tr. 12), and submitted additional evidence. (Tr. 1, 493-517.) This request was

initially denied on August 9, 2010. (Tr. 5.) On August 18, 2010, the Appeals Council set aside their previous decision to consider the new evidence, but ultimately denied Booker's request for review of the ALJ's decision. (Tr. 1.) Having exhausted his administrative remedies, Booker sought a judicial review of the decision under 42 U.S.C. § 405(g).

### B.    Factual History

Plaintiff's Age, Education, and Work Experience

Plaintiff, who is 53 years old and "closely approaching advanced age," 20 C.F.R. § 416.963(d), is six feet, one inch tall, and weighs 175 pounds. (Tr. 504.) He earned an eleventh grade education. (Tr. 20.) Plaintiff's past work includes longstanding work as an automobile detailer and past relevant work as an auto parts picker. Plaintiff also worked as a poultry hanger. All of Plaintiff's past work was at the medium exertional category and at the unskilled specific vocational preparation level.

### C.    Relevant Medical Evidence

Although Booker's seizure disorder was not diagnosed until he was thirty-two, the disorder began when he was twelve years old. (Tr. 481.) Symptoms of Booker's condition include loss of consciousness, shaking all over, bladder incontinence, and biting his tongue. (Tr. 301, 329.)

In February of 2003, despite taking his prescribed medication, Booker was admitted to the emergency room after suffering five seizures the night before. (Tr. 490.) Booker's medical reports consistently listed that he had an active case of seizure disorder (Tr. 416, 421, 422, 428, 429, 435). By December of 2004, Booker was still experiencing seizures, despite being 100% compliant with his medication. (Tr. 424.) In January 2006, as a result of having a seizure, Booker was involved

in an automobile accident.  (Tr. 215.)  By March, he had another seizure resulting in a trip by ambulance to the emergency room.  (Tr. 311.)

In October, 2006, Booker was again rushed to the emergency room.  (Tr. 244.)  This time, Booker was admitted as a result of a fall while standing; Booker stated that he "had a blank out," and other patients reported seeing him "shaking."  (*Id.*)  By November, Booker reported again to the emergency room, this time after experiencing three seizures within that day.  (Tr. 264.)

In June of 2007, Booker again reported to the emergency room after suffering eight seizures over a two-day period.  (Tr. 253.)  By August, Booker was again forced to return to the emergency room by ambulance.  (Tr. 294.)  On this occasion, Booker suffered two seizures which were witnessed by family members and resulted in loss of consciousness.  (Tr. 301.)  In September, Booker experienced a seizure that caused him to fall out of bed.  (Tr. 366.)  By October, Booker reported to the emergency room after suffering three seizures within one day.  (Tr. 325.)

Medical reports from 2008 indicate that Booker "has frequent seizures."  (Tr. 480.)  These reports are further corroborated by more recent 2010 reports which state that Booker has a "history of seizures" (Tr. 511), experiencing two to three seizures a week.  (Tr. 503.)  By mid-2008, his doctors diagnosed his epilepsy as intractable epilepsy.  (Tr. 372, 456, 458.)  After his insured status expired, Booker's multiple seizures continued, and he was treated at Baylor Family Medicine and Baylor University Medical Center.  (Tr. 493-514.)

In May of 2010, Plaintiff's treating physician Misti Grimson, M.D. ("Dr. Grimson"), of Baylor Family Medicine, completed an RFC assessment.  (*Id.*)  Dr. Grimson's retrospective opinion stated that Booker could only stand and/or walk for a total of two hours in an eight-hour workday. (Tr. 528.)  Further, she stated that Booker may not be able to sit, stand, walk, lie down, or recline

4

because of his frequent seizures.  (*Id.*)  Dr. Grimson also reported that Booker can only occasionally

lift and carry items weighing from zero to 50 pounds.  (*Id.*)  Dr. Grimson reported that Booker would

be limited in repetitive actions involving pushing and pulling.  (Tr. 529.)  Moreover, Booker's

treating physician stated that he is unable to climb; is only able to squat, reach up, and kneel

occasionally; but can bend frequently.  Dr. Grimson stated that Booker would probably miss four

or more days of work per month because of seizures, that his limitations began in 2000 and were

expected to last for one year or more, and that alcohol or drug abuse was not a contributing factor.

(Tr. 529-30.)

### D.  *Plaintiff's Hearing*

Plaintiff testified to his age, education, and past work experience (Tr. 34-40.)  Plaintiff also

testified about his incarceration from approximately 2002-2004.  (Tr. 40.)  At the time of the

hearing, he lived with his sister and brother-in-law and reported that he generally slept and rested

during the day.  (Tr. 47.)  He could not drive, and said the last time he drove was when he was at

his job as a car detailer.  (Tr. 48.)  He reported he had not had any alcoholic beverages for two years

and did not smoke.  (Tr. 49.)  He testified that he didn't leave the house by himself.  (Tr. 52.)

Plaintiff's sister, Linda K. Blair, also testified.  She witnessed Plaintiff having seizures four

to six times a month.  (Tr. 53.)  In describing his seizures, she noted that his when he has a seizure,

his speech changes, he "falls out" and urinates on himself, and afterwards, he does not remember

anything.  (Tr. 54-55.)

Ms Blair related that when he had  seizures during his sleep, he fell out of bed.  (Tr. 55-56.)

Sometimes his seizures were back-to-back and he would not get out of  bed.  (*Id.*)  On those

occasions, Ms. Blair took him to the hospital where he was treated with intravenous medications.

(*Id.*)  She reported that the frequency of his seizures seemed to have increased in the past year.  (*Id.*)  She testified that he took his medications, Dilantin and Tegretol, regularly, except that occasionally, he had run out of medications.  (Tr. 57.)  She confirmed that after his seizures, he slept two or three hours and that he did not go anywhere alone.  (Tr. 59.)

A VE testified that Plaintiff would not be able to perform his past relevant work as an auto detailer and should not work abound dangerous machinery, caustic materials, or other dangers, such as heights or flames. (Tr. 62-64.)  The VE testified that he could perform other work such as laundry worker, dining room attendant, and production worker, all of which are found in significant numbers in the regional and national economies.  (Tr. 65.)  The ALJ asked the VE what employers would consider an acceptable length of time for a worker to be "off task" during work.  The VE responded that an employer's tolerance level would be somewhere in the three to five minute range.  (Tr. 67.)

On cross-examination, the VE testified that an employee who is absent three or more days a month on a regular basis would not be able to keep most jobs after the 30- to 60-day probation period expired.  (*Id.*)

### E.     The ALJ's Decision

As previously stated, when the ALJ reached the step three analysis, the ALJ found that Booker did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, after she specifically considered Listings 11.02, for convulsive epilepsy, or grand mal seizures, and 11.03, for non-convulsive epilepsy, or petit mal seizures.  (Tr. 19.)  In her RFC findings, the ALJ found Booker

capable of sustaining medium work[2] as defined in 20 C.F.R. § 404.1567(c), with the limitations of not operating dangerous machinery or working at heights.  (Tr. 20.)  The ALJ found that Plaintiff's statements concerning the limiting effects of his symptoms are not credible to the extent that they are inconsistent with her RFC assessment.  She cited his temporary part-time work as a painter in 2008, his jail medical records from 2002-2004 which indicated to her that Plaintiff's seizures were controlled by a structured environment, certain emergency room records which indicated he was "released to return to work without restriction," and his non-compliance with his medication when he ran out of his prescriptions.  (Tr. 21.)  The ALJ decided that Plaintiff was not disabled under the Act because he could control his seizures with medication.   (Tr. 22-23.)

## II.      ANALYSIS

### A.      *Standard of Review*

To be entitled to social security benefits, a plaintiff must prove that he is disabled for purposes of the Social Security Act.  *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled.  Those steps are:

---

[2]  A job is considered "medium work" if it "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

1.      An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.      An individual who does not have a "severe impairment" will not be found to be disabled.

3.      An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.      If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5.      If an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability.

*Leggett*, 67 F.3d at 564.  The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference.  *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. §405(g).  Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must

be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### B.     Issue for Review

**Whether the Appeals Council's standard form denial of
review without explanation of its consideration of the new
evidence in this case is legal error that requires reversal and remand**

Plaintiff contends that the Appeals Council failed to apply proper weight to the RFC assessment of Plaintiff's treating physician, Dr. Grimson, which Plaintiff submitted as new evidence on appeal. Additionally, Plaintiff faults the Appeals Council for failing to provide any indication that it engaged in the six-factor analysis for weighing medical opinions that is required when the Commissioner gives a treating source's opinion less than controlling weight. *See* 20 C.F.R. § 404.1527(d).[3] The Appeals Council's only mention of the treating source assessment in the Notice of Appeals Council Action is the standard form rejection:

> In looking at your case, we considered the brief submitted by your attorney, the Residual Functional Capacity assessment by Dr. Misti Grimson, and the reasons you disagree with the decision. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

---

[3] These factors must be considered when controlling weight is not given to a treating source's opinion:

    1. the physician's length of treatment of the claimant;

    2. the physician's frequency of examination;

    3. the nature and extent of the treatment relationship;

    4. the support of the physician's opinion afforded by the medical evidence of record;

    5. the consistency of the opinion with the record as a whole; and

    6. the specialization of the treating physician.

20 C.F.R. § 404.1527(d).

(Tr. 1.)  Plaintiff contends that Dr. Grimson's treating physician opinion was directly at odds with the ALJ's decision and diluted the record to the extent that the decision is not supported by substantial evidence. Plaintiff maintains that reversal and remand for further consideration of Dr. Grimson's RFC assessment is required.  See 20 C.F.R. § 404.1527(d),(f)(3), SSR 96-5p.

The government responds that the Appeals Council had no duty to specifically discuss Dr. Grimson's RFC assessment because, based on its internal procedures, the Appeals Council need not provide a detailed discussion about all new evidence submitted to it. *Higginbotham v. Barnhart*, 405 F.3d 332, 335 n. 1 (5th Cir. 2005) (referring to a memorandum from the Commissioner's Executive Director of Appellate Operations dated July 1995).  The government also relies upon *Jones, v. Astrue*, 228 F. App'x 403, 407 (5th Cir. 2007).  In *Jones*, the appellate court held that the Appeals Council was not required to explain the weight given to new evidence of the claimant's IQ score because it was consistent with earlier evidence and "did not so contradict earlier evidence that a 'weighing' of new and old evidence would be required." *Id.*  The government also argues that the new RFC assessment is not material because Dr. Grimson's assessment is too summary, is not supported by objective medical evidence, and is contradicted by the medical evidence of record.

In his reply, Plaintiff maintains that this case is distinguishable from *Jones* and that the government's attempt to *post hoc* rationalize that the Appeals Council's decision is supported by normal CAT and MRI scans and that his seizures are well-controlled when he is compliant with medication are not proper where the Council never properly weighed Dr. Grimson's opinion.

## Discussion

The Appeals Council must consider new evidence presented for the first time in a request for review.  *Rodriguez v. Barnhart,* 252 F. Supp. 2d 329, 336 (N.D. Tex. 2003), *citing* 20 C.F.R.

§ 404.970(b); *see also Carry v. Heckler,* 750 F.2d 479, 486 (5th Cir.1985) (all evidence, including

new evidence, must be reviewed by the Appeals Council in making its decision). "When the Appeals

Council makes a decision, it will follow the same rules for considering opinion evidence as

administrative law judges follow." 20 C.F.R. § 404.1527(f)(3); *see also Newton v. Apfel,* 209 F.3d

448, 460 (5th Cir. 2000).

Generally, the opinion of a treating source is entitled to controlling weight if it is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2);

*Spellman v. Shalala,* 1 F.3d 357, 364 (5th Cir. 1993).  Even when a treating source opinion is not

given controlling weight, the opinion still is entitled to deference "and must be weighed using all

of the factors provided in 20 C.F.R. 404.1527 and 416.972." SSR 96-2p, 1996 WL 374188 at *4

(SSA Jul. 2, 1996).  *See also Newton,* 209 at 456.  "[T]he ALJ is free to reject the opinion of any

physician when the evidence supports a contrary conclusion." *Newton*, 209 F.3d at 455.  Every

medical opinion is evaluated regardless of its source, but the Commissioner generally gives greater

weight to opinions from a treating physician.  20 C.F.R. § 404.1527(d).  In fact, when "a treating

source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence," the Commissioner must give such an opinion

controlling weight.  *Id.*  A treating physician's opinion may be given little or no weight when good

cause exists, such as when the treating physician's evidence is inconsistent with other substantial

evidence, is conclusory, or is unsupported by medically acceptable clinical, laboratory, or diagnostic

techniques.  *Id.* at 455-56.

11

Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhart,* 405 F.3d 332, 337 (5th Cir. 2005). Retrospective medical opinions are valid. *See Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) ("[A] diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment." (quoting *Stark v. Weinberger*, 497 F.2d 1092, 1097 (7th Cir. 1974)). Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision.

> If the new evidence relates to a period before the ALJ's decision, the Appeals Council "shall evaluate the entire record including the new and material evidence submitted . . . [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."

*Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (quoting 20 C.F.R. § 404.970(b)).

Recent case law provides that if the Appeals Council has failed to properly evaluate new medical evidence which is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination, the case should be remanded so that the Appeals Council fully can evaluate the treating source statement as required by law. *See Brown v. Astrue*, No. 3-10-CV-00275-O-BK, 2010 WL 3895509, **4 -6 (N.D. Tex. Sept. 13, 2010) (remand required where the Appeals Council noted that it had considered the new evidence but information did not provide basis to change the ALJ's decision, yet new evidence significantly conflicted with the ALJ's assessment of Plaintiff's work abilities); *Lee v. Astrue*, No. 3-10-CV-155 -BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010) (remanding to Commissioner for reconsideration where Appeals Council failed to specifically address new evidence that diluted the record to the point that Commissioner's determination was insufficiently supported); *Stewart v. Astrue*, No. 7-07-CV-052-BD, 2008 WL 4290917 *4 (N.D.

Tex. Sept. 18, 2008) (remand required where no indication that Appeals Council evaluated treating source statement regarding claimant's ability to perform work-related activities and new evidence so inconsistent with ALJ's findings that it undermined ultimate disability determination); *see also Jones v. Astrue*, No. H-07-4435, 2008 WL 3004514 at *4-5 (S.D. Tex. Aug. 1, 2008) (remand required where summary denial of a request for review provided no indication that the Appeals Council evaluated the treating source statement as required by SSR 96-5); *Green v. Astrue*, No. 3-07-CV-0291-L, 2008 WL 3152990 at * 7-9 (N.D. Tex. Jul. 30, 2008) (same); *Stevenson v. Astrue*, No. 3-07-CV-269-N, 2008 WL 1776504 at *3-4 (N.D. Tex. Apr. 16, 2008) (same); *cf.* 20 C.F.R. § 404.1527(f)(3) (requiring that when the Appeals Council makes a decision, it must follow the same rules for considering medical opinion evidence that the ALJ must follow); SSR 96-5 (providing that adjudicators must weigh medical source statements and RFC assessments and "provide appropriate explanations for accepting or rejecting such opinions").

The RFC assessment of Plaintiff's treating physician, Dr. Grimson, is the only treating or examining functional assessment, and it directly contradicts the ALJ's findings.  It is particularly significant in this case because, at Plaintiff's hearing, the  ALJ indicated that if Plaintiff presented more medical evidence from a credible doctor that supported Plaintiff's testimony at the hearing, then "obviously, he meets the listing."  (Tr. 61.)

Without such evidence, the ALJ found that Plaintiff's testimony was not credible to the extent it conflicted with the ability to work at a medium exertion level.  The new retrospective evidence from the treating physician, Dr. Grimson, stated that Booker could only stand and/or walk for a total of two hours in an eight-hour workday, may not be able to sit, stand, walk, lie down, or recline because of his frequent seizures, can only occasionally lift and carry items weighing from

13

zero to 50 pounds, and would be limited in repetitive actions involving pushing and pulling.  (Tr. 529.)  In Booker's treating physician's opinion, he is unable to climb; is only able to squat, reach up, and kneel occasionally; but can bend frequently.

The ALJ's decision that Booker is not disabled implicitly found that Booker could maintain employment, whereas Dr. Grimson stated that Booker would probably miss four or more days of work per month because of seizures, a level the VE rated as unacceptable to any employer.

"Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  A reasonable possibility exists that the treating physician's RFC assessment would have changed the ALJ's determination.  The Appeals Council's standard form rejection of Plaintiff's new evidence is ambiguous and unpersuasive. Accordingly, this case should be remanded for further consideration in light of the new evidence Plaintiff submitted to the Appeals Council.

## RECOMMENDATION

The Court recommends that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with this recommendation and proposed findings and conclusions.

SO RECOMMENDED, August 15,  2011.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).